and also the Nevada insurance consumers in the areas of automobile insurance, homeowners, property, and casualty. And it's our position there that those consumers are the real losers in this case by the trial court's action in validating a 35-year-old statute.  One after another, you have a whole number of cases ruling the other way. Isn't this pretty well- I know that, Your Honor, but we're the great state of Nevada, and we are also the Ninth Circuit. And so I think we need to look at this case on its facts or its lack of facts, its lack of evidence, and also its lack of plaintiffs. If I'm a licensed broker in Arizona and I want to become a licensed broker in Nevada, what do I have to do? You have to be licensed in your home state and apply for a license in Nevada. Do I have to take a test and have any educational requirements, or are those all waived? No, Your Honor. As a matter of fact, under federal law, Graham, Leach, Bliley, Nevada cannot test that person. Nevada cannot test that Arizona person. So how are you- Nevada cannot require CEs from that Arizona person. Right. Not like a law situation. My point is, so how are you protecting consumers? I mean, if you automatically become a licensed real estate broker in Nevada, if you're a licensed real estate broker someplace else, what's the point in terms of consumer protection that you have to have a Nevada person countersign these things? I think you've put your finger on it, Your Honor, and that is Nevada person is tested on Nevada law. The Nevada agent is required to keep continuing education on Nevada law. So when you get your auto policy and you write it with your friend from Arizona, that nonresident producer, that nonresident producer is not necessarily up on Nevada law. But if that nonresident producer becomes a Nevada licensee, knows nothing about Nevada law, maybe, and still is immediately licensed to practice. And that's our point, Your Honor, is then when you place that auto policy with your Arizona nonresident producer, then with Big Insurance Company, then Big Insurance Company also has to retain the Nevada agent. The policy comes to the Nevada agent. The Nevada agent reviews it. And let's say Nevada has uninsured motorist coverage. Nevada has underinsured motorist coverage. Nevada has MedMal coverage. This guy in Arizona may not know anything about that. The Nevada agent looks to see if you know about your coverage. The point is if the Arizona person is now a Nevada person just by simply having been waived in. But that Arizona person doesn't do anything for the consumer necessarily on those types of coverage. Neither does the Nevada license agent. If he screws up, both of them are subject to Nevada regulation, whether they're out of state or in state. If they screw up, they go before the insurance agency. Now, you're saying that because the Nevada agent has to go through the CLE, the education, take the test, that that's the protection, that's the crux of it, right? That helps our consumer. When that agent looks at the policy, sees if those coverages have been given, and then he signs off. We're in the records as a saying that the only thing the law requires, and we're talking about the law and now the facial challenge, is that there's a countersignature and a 5% premium bonus paid. There's nothing in the law that says that the countersigning agent has to do anything. If he wants to take the 5% and go down to the casinos and gamble, and that's all he does every day, he can do that day in and day out. If there's something wrong, Nevada insurance law and the commissioner are going to go after him for his, their election just as they would an out-of-stater. Where do I see in the law this big duty to make this subsequent review on this countersignature? It's in Nevada administrative code, Your Honor, and it is in the record. There's a reg that's passed by an insurance commissioner that says that the countersigning agent shall do the following. Review the policy to make sure it complies with Nevada law. And what's the reference to that, please? Court's indulgence for a moment, Your Honor. NAC 680A410. Six what now? 680A410. 680A is an alpha? 680A410. It's a Nevada regulation. It's in the record. That's on page 25 of your brief. Thank you, Your Honor. The countersigning agent has to maintain complete records of the countersignature transaction, including daily reports, correspondence, names of nonresident agents, handle normal problems arising between the agents and the customers. So if I'm in Nevada, my nonresident producer's in Arizona, I can walk into the Reno office of Lucini Parish and say, hey, man, I don't understand this coverage on my underinsured motorist. I don't understand the waiver. Can you explain it to me? He doesn't have to be on hold waiting for the Arizona producer to get back to him. He can walk right in the office. That's a duty that the resident agent becomes responsible. The nonresident agent has to keep the records. Nevada gets to collect its taxes that way. So there are duties that the resident agent gets paid for, Your Honor. And there's nothing on the face of the statute that says what the nonresident agent is going to get paid. It's the insurer. It's big insurance company A that pays the 5 percent commission to the Nevada agent. Now, your Arizona agent, Your Honor, he can negotiate or she can negotiate any commission that they want with big insurance company A. There's nothing in the record that shows that that commission is reduced in any way, shape or form by Nevada's counter signature law, 680A300. The Arizona nonresident agent might get 10 percent. They might get 12 percent. They might get 7 percent. It's whatever they negotiate with big insurance company. Well, Counsel, we have five adverse decisions in a row here. Florida, South Dakota, Virgin Islands, Puerto Rico, and, of course, the trial court here in Nevada, all going the other way. What's wrong with any of those five decisions? Well, first of all, Your Honor, all of those counter signature laws are different than Nevada's counter signature law. In what significant way? Well, in Florida, for example, I think the nonresident agent actually had to physically go into Florida with the resident agent and, I don't know, assess the risk or something. It was a much more burdensome statute than ours is. Our statute specifically allows the nonresident agent to freely do their business in Nevada. And the nonresident agent doesn't pay a nickel to the resident agent. It's the insurance company that pays our agent. The insurance company pays the nonresident agent. There's not one scintilla of evidence in the record that one nonresident agent has failed to produce business in Nevada because of this statute. It's been on the books for 35 years. There's 15,000 nonresident producers in 2003 in Nevada, and now the numbers have gone up. Does that also explain the South Dakota decision, the Virgin Islands decision, the Puerto Rico decision? Well, Your Honor, I can't speak to all the nuances of each one of their laws, but I know like in the Puerto Rico case, for instance, they tried to justify that case based on their rational basis was that they needed a resident. That's not our position. Our position is that because of the Federal law, the Gramm-Leach-Bliley law, that doesn't allow us to do a least restrictive. There is no least restrictive means here. We can't bring these nonresident people in to test in Nevada like you can with a law school person. We can't make them take CEs. But what the Gramm-Leach-Bliley Federal law does is it actually has a provision in it that says counter signature laws in the states are okay under Federal law. Well, under Federal law, under the Privileges and Immunities Clause, you're saying then there is no harmful discrimination because there's a substantial justification. That's where you're arguing. Is that correct? There's no burden. No burden. We agree insurance is a fundamental right, but there has to be some evidence in the record that a real plaintiff is burdened. There is no evidence in this record. If you go to the cases, it doesn't take much burden to have a constitutional violation on a facial challenge. Well, Your Honor, you've got your own case, that Ninth Circuit case on the masters and pilots where you found that there wasn't a burden, and that was a case where there actually was a different fee for nonresidents versus residents. This statute on its face doesn't burden the nonresident. And then if you look at the evidence or lack of evidence in this record, there's no evidence that any nonresident producer has lost a nickel because of this statute. There should have been some evidence presented to this trial court, Your Honor, and there just simply wasn't. One plaintiff, Ms. Restrepo, she's a salaried employee for an insurance brokerage house here in Sacramento. And her company now, ABD, owns a Nevada agency. So when Ms. Restrepo writes a policy for a Nevada risk, she can have her policy countersigned by Lucini Parish in Reno and her firm, ABD, doesn't lose a nickel. And Ms. Restrepo's salary isn't going to be affected. One nickel. She has no injury. You know, it's the old law school, the sword sticking in you, that Ms. Restrepo has no injury. Then you have the Council of Insurance Agents and Brokers, which is a corporation trying to bring in effect privileges and immunities case as a citizen. A corporation in the Ninth Circuit can't be a citizen. Then the members of the Council of Insurance Agents and Brokers, those are all firms. Those aren't citizens. So you've got the trial court finding a privileges and immunities violation on behalf of this agency with a stacking theory on a privileges and immunities case. And, Your Honor, it's our position that that's improper in this circuit because a corporation is not a citizen under Article IV, Section 2, United States Constitution. Let me go back a little bit. On page 18 of your brief, you say it's clear from reviewing the statute, regulation and history that Nevada has a rational basis to enact and enforce this provision involving consumer protection. It benefits the policyholder in several ways, a local point of contact, a source of advice, assist in the claims process, protected from unqualified agents in other states, requiring local licensed agents who are residents to sign on policies, gives greater assurance they will receive reputable and qualified services. Also benefits by having a record of all transactions. Now, you haven't listed in here the requirement that you told us about five minutes ago where they go through what's happening and measure it against Nevada law and make sure that it's all, it all fits with Nevada law. Again, give me the section that you say requires them to do that in this countersignature process. Again, my statement there is based on the custom and practice of what actually happens with the countersigning agent, and it's also based on that regulation. What's the reg? It's the same one I just cited to you, Your Honor. 680-A-410? Yes. 680-A-410. 410, because the law is 680-A-300. Right. That's Nevada revised statute. Right. 680-A-300, and the Commissioner promulgated this reg, which he has authority to do, which provides the duties for the countersigning, the Nevada residents. I believe the reg is in the brief, Your Honor. It's not listed in the index. I can't find it. Page 25 it is. I thought it was. And what that reg does is it makes the Nevada agent. Yes, it is. Page 25, second line. I'm sorry, Your Honor. What that reg does is it makes the Nevada agent responsible as the agent for that Nevada consumer. So what, once that Nevada agent becomes responsible, they better check that policy because they're on the hook legally and also with the insurance commissioner if something goes wrong with that insurance, with my auto insurance. Counsel, you've set up this argument very clearly. Why don't we hear from the other side, and then you can reserve the remainder of your time. Thank you, Your Honor. May it please the Court. My name is Scott Sinder. I'm here on behalf of the Council of Insurance Agents and Brokers and Rebecca Restrepo, the plaintiff appellee in this case. I have to start with Gramm-Leach-Bliley to make a couple points. Speak a little louder, please. Yeah, I'm sorry. I'm fighting my own congestion. Let me start with the Gramm-Leach-Bliley point. The Gramm-Leach-Bliley Act was signed into law in November of 1999. It does not do what they just represented. It just absolutely does not do it. It does not forbid any State from requiring any individual to sit for a licensure exam in order to qualify for the license. The provision that he refers to, which is not briefed by them at all in any of their briefs, is 15 U.S.C. section 6751. It's called NARAB. It's commonly called the NARAB provisions. What these are are Federal incentives for States to grant licenses on a reciprocal basis. There's absolutely no requirement under Federal law. These were not briefed and raised in a brief, as I remember. They were briefed by an amicus. You denied the motion for that. Yeah, well, that's not in here. So it shouldn't be part of this argument, then. I agree, but I feel compelled to let you know that he raised it, and you must know that it is not a bar to having a non-residency. All right. Well, let me go to this 680A.410, which I confess I have not read. I was looking for some responsibility, as Judge Brunetti was, on the part of the local agents to perform some substantive services on behalf of the consumers. And now we're told that if I look at 680A.410, I'm going to find all kinds of technical substantive requirements that a person countersigning has to live up to before the signature can be placed on the document. Your Honor, a couple of things about that. First of all, under the Privileged Immunities Clause, the question is, is this a burden, which it clearly is. It clearly treats non-resident transactions differently than resident transactions. Right. Then is it substantially justified? And in doing that analysis, you look at their rationale, coupled with, are there less discriminatory means to achieve the same objective? Yeah, but I mean, this seems to be part of their rationale. There's not just a local guy taking 5 percent off the top and going to the casino. There's somebody who's familiar with local law, looking at the transaction, measuring it against local law, and ensuring that it's appropriate and accurate. Your Honor, there's no reason why a non-resident can't do the exact same thing. In Piper, the Supreme Court said exactly that. There's no reason why you can't. But is that what 680A410 says? It imposes an obligation on the local person to measure this against local law. Your Honor, that's the representation. Have you read it? I have read it a while ago. Say. You know what? I don't know. But I'll take the point. I will take the point that it imposes the obligation on the local person. No matter what it says. It doesn't matter, because you can impose the same obligation on the non-resident agent. So that means that presupposes that the non-resident is intimately familiar with the laws of Nevada regarding these issues. Your Honor, Piper. But the point is, not necessarily so. And so we're saying for consumer protection purposes, we're making sure you run it through a local person who is familiar. It's like lawyers from different states. Your Honor, Piper, Friedman, the Bernard Thornston case that came out of the United States Virgin Islands, all three cases, United States Supreme Court rejects exactly this theory. There is no basis in this record or otherwise to presume that a non-resident is any less competent than a resident. Can a lawyer from Nevada just wander over and practice in California and claim the privileges and immunities clause? He can if he sits for the bar exam. That's exactly what this is. What if he doesn't? Then he shouldn't be able to. But. Why? If the State of California says that the requirement for practicing law here is that everyone needs to take the bar, they can require everyone to take the bar. But you have to treat. And become familiar with California law. But you have to treat residents and non-residents differently. There is a less discriminatory means to accomplish all the objectives outlined by the State. And that is you can require the non-resident to sit directly for licensure. In fact, in Florida, in one of the cases you cited that relates to this body of litigation, there were two classes of provisions that were struck down. In the one class, the surplus lines category, the State of Florida now requires non-residents who want that license to sit for a licensure exam in the State of Florida to qualify for that license. There is no reason why the State of Nevada can't impose all the regulatory requirements on the non-resident agent. There is no reason why the State of Nevada cannot require a non-resident to sit for the exact same licensure exam that the resident sits for. In fact, the Supreme Court jurisprudence in this context requires it. I just looked at 410 again. I very candidly, when I read the brief, I kind of breezed through this because it didn't hit me. And now I'm listening to counsel. Counsel says something about that this 410 requires comparison of the contract and the terms of Nevada. It doesn't say that. What it requires is that the countersigning agent may maintain complete records of countersignature transactions reports. In other words, he's got to keep a file on this. It also says that the countersigning agent shall handle normal problems arising between agents and customers and is answerable to division for complaints, problems relating to policies which he has countersigned. Now, the non-resident agent has the same duties. Yes, sir. As far as I know. And I'm going to go back and check that. So all I've said is even though you just countersigned, you're going to have to have the duties under the policy. Well, the agent can't write it, even though he hasn't taken the test, unless he's responsible to the division. So how does that affect your analysis if both of them have the same duties? Let's assume that. There is no basis for the discrimination. Yes, because we're still back to the basic privilege and immunity analysis. Is that correct? Yes, sir. And if you look at the core provision, the core statutory provisions that we've challenged, 680A, section 300, in subpart 5, they actually require that if the countersigning agent is going to do any post-sale activities or conduct, they have to separately contract for that. It is not encompassed by the countersignature fee. And so the statutes require a separate payment if there's any claims assistance, for example. Well, if we throw out some sort of substantial justification if we go under privileges and immunities of 410, I mean, just put it aside for now. Tell me where that leaves us in your argument. Where you started? Yes, sir. There's no basis for requiring the imposition of a countersignature requirement on nonresidents that's not imposed on residents. Because under the privileges and immunities that what? A nonresident and resident should have the same opportunities. Is that right? Under Piper, quote, a State must accord residents and nonresidents equal treatment. Friedman says the same thing. Baldwin says the object of the clause is to place the citizens of each State upon the same footing with citizens of others. Let's talk about burdens then. Let's talk about the fact that Restrepo is a salaried employee. This goes back to standing to a certain degree, but it also flops over into this argument, doesn't it? Or does it? I believe they're separate inquiries, that once you've established the standing, then you separately evaluate this particular claim. But we're kind of evaluating the same kind of things, aren't we, with Restrepo? What's the burden on Restrepo? Well. They've got this new agent that they've lined up, and they're now affiliated with a Nevada agent. Well, there's a couple things. In order to place a policy for any particular insurance company, you have to be appointed by that company by the State of Nevada. And so whether or not the Nevada member of this firm is or is not appointed for any given contract would have to be evaluated on each and every case. But it still inserts a step into the process that no resident agent has to go through. If you take that same transaction, if it's the resident's client and the resident is undertaking the transaction, they don't have to determine whether. In other words, you're saying this statute does not exempt Restrepo, even though they're associated with a Nevada agent, from going through the process of getting a Nevada agent to sign. Absolutely not, Your Honor. Is that enough burden, then, under the privileges and immunities? Under this circuit's jurisprudence and under the Supreme Court jurisprudence, anything that's a concrete risk of injury, anything that they have to do that somebody else doesn't, is enough to qualify for standing. But Restrepo, contrary to the assertions of appellants counsel, she over and over again claims in her depositions that this has cost her money. It's true that she's a salaried employee. It's also true, under the record, that she is entitled to bonuses, and those bonuses are based in part on the performance of her office. Her part of the agency. She faces, at a minimum, under Harris, a concrete risk of harm economically. But there are also administrative burdens that are imposed on these transactions that are not imposed on transactions that are done outside the State of Nevada. She testifies over and over again in her deposition that she and her staff go out to find  So even though the, you have to admit that the financial burden is a little bit loose, because we've never, all we know is that the employer, and according to her deposition, she's not too sure how the employer does it. But because she's responsible to be the rainmaker, if she's got to pay these 5%, somehow it gets in the calculation. It's 5% of the premium. Yeah, of every premium as I understand it. Of every premium, which is, their revenue out of any given transaction is significantly less than that. It's a percent, their own revenue is a percentage of the premium. But her salary isn't directly tied to premium generation from her deposition, I don't think. Her particular salary is not directly tied to premium generation. But clearly, agents and brokers are producers. Their job is to produce business, and it's clear in her deposition and elsewhere that there's a financial harm. But there's also the burden of having to deal with the statute itself. There's another point, and this is that there is nothing in the record, according to Appellant's counsel, arguing about who pays these. Under the statute itself, on Section 5, it requires a division of the commission between the non-resident and the resident, a division of the commission. The second point is, Ms. Rousseau. A division of the 5% or a larger? A division of the overall commission that's normally accounted for under this transaction, such that the non-resident gets it, or the resident gets at least an amount equal to 5% of the premium. In Ms. Restrepo's deposition, she makes clear that this comes out of the ABD portion, her portion of the commission on the transaction. But there's another point. Under the state's own rules, for most policies, especially the ones identified by counsel, auto insurance, for example, there are filed rates. Those rates include commission loads. Filed with the state, you can't deviate from that. There's no difference on whether a resident or non-resident is involved in the placement in terms of the overall amount of the commission that the insurers are entitled to pay under those filed rates. Is that in the record? That is not in the record. But it is a matter of statutory law in Nevada, and I'm responding to the point, but it's not in the record. I'm now looking at 680A410.5. All commissions on property and casualty insurance, which was sold by an agent or broker who is not licensed in Nevada and which covers a risk located in Nevada, must be paid to the countersigning resident agent. What does that mean? This is, Your Honor, this is for a placement that's made by someone who's not licensed by the State of Nevada at all. And under Nevada law, I believe that they are not licensed in any way. So regardless of residency, they're not licensed by the State of Nevada. And under Nevada law, at least at the time this provision was effectuated, my understanding is, again, not in the record, that you wouldn't be entitled to receive any commission at all because otherwise you'd be engaging in unlicensed activities for which you're required to be licensed. So you could have non-licensed non-residents using countersignature, and you could have non-resident licensed agents that have to also get a countersignature. Yes. I mean, I think that probably the more appropriate way to look at it is if you're not licensed at all, it's not a countersignature that the resident's providing. It's actually the signature on the policy. Yeah, it's a commission deal only. Yeah. Anything further, Counsel? No, Your Honor. Thank you, Counsel. Mr. Sender, excuse me, Mr. Auer, you have a little bit of return time. Thank you, Your Honor. Judge Trout, I think what that means is if there was an unlicensed producer from another state and a Nevada resident agent caught it when they countersigned it, then all the commission would go to the Nevada resident agent and not to that unlicensed producer that's not entitled to be paid because they weren't properly licensed in Nevada. Well, that would also prevent a kickback by the Nevada agent, too. That would also prevent a kickback by the Nevada agent. There's nothing in 410 that says that the licensed broker in Nevada has to examine the legality of the transaction. I believe that's the common practice and the language that ---- It's a common practice, but it's not in 410. Well, Your Honor, what I would suggest to you is when they become responsible as the agent, then that's what creates their duty to review the policy. So is the nonresident. The nonresident is also responsible. He's licensed in Nevada, too, or she is in this case. In effect, you get two agents. You end up with two agents, one from Arizona, one from Nevada. If you're the consumer, you've got one who has Nevada education, Nevada CEs, Nevada tests. You've got one that doesn't. You've got, with all due respect to counsel, there is no least restrictive means here if Nevada wants to do that because under Graham-Leach-Bliley, we cannot, contrary to counsel's position under 15 U.S.C. 6751, states must award licenses to insurance producers of other states on a reciprocal basis and cannot place additional restrictions on that producer except Section 321.5 specifically authorizes the states to enforce counter signature laws in order to protect consumers. Federal law recognizes that. Was that argued in the briefs or before the court? It was presented before the court in a motion to reconsider before the trial court, Your Honor. That's my understanding. I did not present it, but my understanding is it is in the record before the trial court, and therefore it should be before this Court. All right. Give me the citation on that again. 15 U.S.C. 6751. 15 U.S.C. 6751? Yes, Your Honor. And it's Section 321, subsection 5. And that was in a motion for reconsideration before the district court. Yes, Your Honor. And that's Congress infringing on the privileges and immunities. Okay. Anything further, counsel? Just briefly, Your Honor. Getting back to the burden question, in order for this statute to burden a nonresident producer in your circuit, it has to be a genuinely significant deprivation, such as a denial of the basic necessities of life or the denial of a fundamental political right. Barber v. State of Hawaii, 42 F. 3rd, 1185, this circuit, 1994. Plaintiffs must demonstrate that they are prevented or discouraged by the state from pursuing their trade. That's in your International Organization of Masters and Pilots case. I don't have the site here in front of me. And in this threadbare evidentiary record, Your Honor, you don't have any proof of that. What you have is the trial court saying, you know, this statute looks unfair to me on its face. And it's not discriminatory on its face. Therefore, real plaintiffs need to come forward with real evidence and prove, you know, bring in a commissioned nonresident producer that says, you know, my commissions actually went down because of NRS 680A 300, and put that in the record. Not Ms. Restrepo, who's a salaried employee who, since May of 2004, her company has a Nevada agent that will countersign her policies. She won't lose a nickel. You have this trade organization. The trade organization's president, Ken Creerer, in an unsworn declaration, says, you know, people are losing money on this thing. But when he's deposed, he doesn't know one nonresident producer's name. He doesn't know them personally. He has no personal knowledge that anybody's lost a nickel because of this statute. Statute's on the books 35 years, 15,000 nonresident producers. Then in the next year, they go up 17 percent, while the Nevada producers go up 3 percent. So if we're trying to, if this is protectionist legislation, it's not working very well. Well, if this legislation directly involves the gecko, I assume. Pardon me, Your Honor? The gecko. The gecko? The gecko would be the company. That would be the ultimate on this statute, I take it. The gecko pays. The insurer pays. Exactly. The insurer, not the nonresident producer. Thank you. Thank you, counsel. The case just argued will be submitted for decision.
judges: Brunetti, O'scannlain, Trott